IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

JOSHUA PERRY JONES TILLER                                                                PLAINTIFF

v.                        Civil No.   6:14-cv-06086

SERGEANT AMIE MARTIN, Jail Administrator,
Hot Spring County Detention Center; and SHERIFF
HOLLINGSWORTH, Hot Spring County                                               DEFENDANTS

**MEMORANDUM OPINION**

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  The case is before me pursuant to the consent (ECF No. 15) of the parties.

While Plaintiff was incarceration in the Hot Spring County Detention Center (HSCDC), he contends his constitutional rights were violated in the following ways: (1) his grievances were not kept; (2) he was denied adequate medical care; and (3) he was denied access to his attorney's address.

Defendants filed a motion for summary judgment (ECF No. 44).  A hearing was held on September 14, 2016, to allow Plaintiff to testify in response to the motion.  The motion is now ready for decision.

**1.  Background**

Plaintiff was booked into the HSCDC on December 18, 2013.  *Defendants' Exhibit* (hereinafter *Defts' Ex.*) A.  On December 19, 2013, his parole was revoked.  *Defts' Ex.* B.  Plaintiff remained incarcerated there until April 23, 2014, when he was transported to the Southwest Arkansas Community Corrections Center, Technical Violator Program.  *Defts' Ex.* C.

When he was booked in, Plaintiff had three empty prescription medication bottles with him for Prozac, Nexium, and Celebrex. *Defts' Ex.* D at ¶ 6. Sergeant Amie Martin was at that time the jail administrator. *Id.* at ¶ 4. On December 19, 2013, Sergeant Martin informed Darrell Elkin, the jail's medical officer, about the prescription bottles. *Id.* at ¶ 7. Sergeant Martin requested that Elkin see Plaintiff when he came to the detention center. *Id.*

According to Sergeant Martin, Elkin and "Young's Pharmacy handled getting the prescriptions transferred because it lacked the proper medical credentials." *Defts' Ex.* D at ¶ 8. Her understanding was "that the prescriptions were originally filled by a pharmacy that was only open one or two days per week and it was very difficult for Mr. Elkin and Young's Pharmacy to get the prescriptions transferred for filling." *Id.* at ¶ 9. The transfer was made even more difficult due to the Christmas and New Year holidays. *Id.* at ¶ 10.

From December 19, 2013, through the time Plaintiff left the facility, Sergeant Martin states she "had numerous conversations with" Plaintiff. *Defts' Ex.* D at ¶ 11. She states that during this entire time she "never noticed [Plaintiff] acting-out, behaving irrationally or having any mental or physical distress." *Id.* at ¶ 12.

On December 25, 2013, Plaintiff submitted a grievance stating he had been denied his prescription medications since his arrival. *Defts' Ex.* E. He stated he had not received any Prozac or Celebrex and had only received his Nexium twice. *Id.* Plaintiff stated that he was supposed to take the pills every morning. *Id.* In response, he was told that Young's Pharmacy was having difficulty getting the prescriptions transferred from the Christian Pharmacy. *Id.* Because of delays in getting his medication, Plaintiff testified he had added pain, mental anguish, and his Post Traumatic Stress Disorder (PTSD) worsened.

On January 4, 2014, Plaintiff submitted a medical request stating that he had just received three medications and would like to know the names of the medication and dosages so he could contact his doctor to see if he approved the changes. *Defts' Ex.* F. In response, Plaintiff was told Elkin had prescribed the generic forms, fluoxetine, ranitidine, and meloxicam, of his regular medications. *Id.*

The medical administration records indicate Plaintiff began receiving all three medications on January 3, 2014. *Defts' Ex.* G. He continued to receive these medications throughout his incarceration. *Id.* It appears Plaintiff did receive Nexium on December 22, 2013, and December 23, 2013. *Id.*

Plaintiff testified that he submitted a grievance stating that he had a case pending in Hot Springs and he had been told by his parole officer that he would be transferred there. He asked for his attorney's address, a § 1983 form, and complained that he was not receiving his medication. Plaintiff was called into Sergeant Martin's office. She called the Garland County District Court on December 31, 2013, and was told they would not transport him.

Plaintiff testified that Sergeant Martin refused to give him his attorney's address and his medications. Plaintiff testified he had the attorney's address but it was in his property and he could not get it. In fact, he testified he did not receive his attorney's address until just before he was transferred out. Between December and April, Plaintiff testified he had no contact with his attorney. He indicated the attorney did not know where Plaintiff was until Plaintiff wrote him in April. As a result, Plaintiff testified he was stressed, had thoughts of helplessness, and couldn't believe this was happening to him. Plaintiff did not miss a court date.

On March 27, 2014, Plaintiff submitted a grievance asking for his attorney's address and for a § 1983 form. *Defts' Ex.* I. The following day, in the space for the officer's response it states: "Spoke with Tiller and got address for him." *Id.* The signature of the officer is illegible. *Id.*

Defendants contend the Plaintiff submitted no grievances about his mail. Plaintiff, however, testified that he talked to Sergeant Martin about it seven or eight times and submitted grievances three times. Plaintiff stated it was his belief that the grievances were destroyed.

Plaintiff testified that Sergeant Martin refused to respond to requests or grievances. He estimated that he submitted 150 grievances. He said not receiving responses made him feel emotionally extremely bad. He said he was not able to complain about the environment he was forced to endure. After he was transferred, he was able to file his claim.

With respect to Sheriff Hollingsworth, Plaintiff testified he never came through the jail. Further, to Plaintiff's knowledge the Sheriff never checked the grievances. Plaintiff testified he had no direct contact with the Sheriff. However, Plaintiff testified that the Sheriff did not do his job of supervising detention center employees.

**2. Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue

of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

### 3.  Discussion

Defendants move for summary judgment on the following grounds: (1) they did not engage in any type of conduct that has resulted in the Plaintiff's constitutional rights being violated; (2) Plaintiff did not submit any grievances regarding his mail; (3) there is no basis on which Sheriff Hollingsworth can be held liable in his individual capacity; (4) there is no basis on which the County may be held liable; and (5) Defendants are entitled to qualified immunity.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

### (A). No Responses to Grievances

"Inmates do not have a constitutionally protected right to a grievance procedure. Because a state grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the state's grievance procedure is not actionable under § 1983." *Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000) (citations omitted); *see also Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (inmates have no constitutional right to grievance procedure); *Cancel v. Goord*, No. 00 CIV 2042, 2001 WL 303713, *3 (S.D.N.Y. March 29, 2001) (inmate grievance procedures are not required by the Constitution and therefore a violation of such a procedure does not give rise to a § 1983 claim); *Blagman v. White*, 112 F. Supp. 2d 534 (E.D. Va. 2000) (inmate has no constitutional entitlement to grievance procedure), *aff'd*, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." *Blagman*, 112 F. Supp. 2d at 542 (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." *Blagman*, 112 F. Supp. 2d at 542 (citation omitted). "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Cancel*, 2001 WL 303713, *3.

The lack of a meaningful grievance procedure did not deprive Plaintiff of access to the courts. Accordingly, this claim fails.

### **(B).  Denial of Medical Care**

"Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished."  *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  The Eighth Amendment deliberate indifference standard applies to all denial of medical care claims.  *Carpenter v. Gage*, 686 F.3d 644, 650 (8th Cir. 2012).  The deliberate indifference standard has both an objective and a subjective component.  *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997).  A plaintiff must demonstrate that (1) he suffered an objectively serious medical need, and (2) the defendant actually knew of the medical need but, subjectively, was deliberately indifferent to it.  *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006).

At issue here is the delay in getting Plaintiff his prescription medications.  Plaintiff came into the jail on Wednesday, December 18, 2013.  The medical care provider, Elkin, was notified about the prescriptions on December 19.  With the exception of Nexium, which it appears he received twice in December, Plaintiff did not begin to receive his prescription medication until January 4, 2014;  a delay of seventeen days which included both the Christmas and New Years holidays.

Elkin, who is not a named Defendant, was the medical care provider who was attempting to get the prescriptions filled.  Sergeant Martin notified Elkin of the situation the day following Plaintiff's admission.  There is no evidence in the record that Sergeant Martin had further involvement in obtaining the prescription medication.  Thus, she is not liable for any further delay.  Additionally, there is nothing in the record to suggest Sheriff Hollingsworth was even aware of Plaintiff's need for medication.

Further, Plaintiff submitted no verifying medical evidence suggesting any delay adversely impacted his health. *See, e.g., Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997) ("when the inmate alleges that the delay in treatment is the constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment") (internal quotation marks and citation omitted); *see also Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005). Defendants are entitled to summary judgment on this claim.

### (C). Interference with Mail

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002)(Exhaustion is mandatory).

Here, Defendants contend Plaintiff did not exhaust his administrative remedies as to any alleged constitutional violations with respect to his mail. Plaintiff, however, asserts that he did submit grievances but the Defendants either did not keep the grievances or destroyed them. For purposes of this motion, I will treat this claim as properly exhausted.

"Inmates have a First Amendment right of free speech to send and receive mail. *Hudson v. Palmer*, 468 U.S. 517, 547 (1984). "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment." *Jones v. North Carolina Prisoners' Union*, 433 U.S. 119, 125(1977).

"Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence." *Davis v. Norris*, 249 F.3d 800, 801 (8th Cir. 2001). "Interference with legal mail implicates a prison inmate's right to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003). "A prison policy that obstructs privileged inmate mail can violate inmates' right of access to the courts." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998).

Restrictions on this First Amendment right are valid "only if [they are (1)] reasonably related to legitimate penological interests," such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved. *Turner v. Safely*, 482 U.S. 78, 89 (1987). In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail. *See Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989).

In this case, the only alleged interference Plaintiff testified about was the failure of Defendants to provide him with his attorney's address. Plaintiff did not testify that his incoming or outgoing mail was censored or interfered with in any other way. Plaintiff introduced nothing to suggest he could not have obtained his attorney's address by a different means such as from a friend or a relative. Plaintiff has not shown the existence of a genuine issue of material fact on this claim. Defendants are therefore entitled to summary judgment.

**(D). Individual Capacity Claims against Sheriff Hollingsworth**

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional

activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability") (internal quotations omitted); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability").

"Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Keeper*, 130 F.3d at 1314 (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility). Here, Plaintiff has established no causal link or direct responsibility of Sheriff Hollingsworth to the alleged deprivation of rights. Sheriff Hollingsworth is entitled to summary judgment.

**(E). Official Capacity Liability**

Sheriff Hollingsworth may be held liable if a policy or custom of Hot Spring County was the moving force behind the alleged constitutional violation. A Plaintiff "seeking to impose liability on a municipality under § 1983 [must] identify a municipal policy or custom that caused the plaintiff's injury." *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997). "There are two basic circumstances under which municipal liability will attach: (1) where a

particular municipal policy or custom itself violates federal law, or directs an employee to do so; and (2) where a facially lawful municipal policy or custom was adopted with 'deliberate indifference' to its known or obvious consequences." *Moyle v. Anderson*, 571 F.3d 814, 817-18 (8th Cir. 2009) (citation omitted); *Jenkins v. County of Hennepin*, 557 F.3d 628, 633 (8th Cir. 2009)(Plaintiff must point to "any officially accepted guiding principle or procedure that was constitutionally inadequate."

Sheriff Hollingsworth argues that other than Plaintiff's bare allegation that he did not get his medications because of a county policy, there is no evidence of any policy, practice, or custom by which Hot Spring County that caused the delay in providing Plaintiff with his prescription medication. I agree. Defendants are entitled to summary judgment on this claim.

### (F). Qualified Immunity

Having found that the facts do not make out a constitutional violation, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009) (unless the facts make out a violation of a constitutional right the defendant is entitled to qualified immunity).

### 4. Conclusion

For the reasons stated, I find that Defendants' Motion for Summary Judgment (ECF No. 44) be granted. By separate judgment this case will be dismissed with prejudice.

**DATED this 9th day of February 2017.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE